JAMES CASSELL, ADMINISTRATOR OF MICHAEL CASSELL,
DECEASED, APPELLANT, v. C. F. MUELLER MACARONI
COMPANY, A CORPORATION, RESPONDENT.

Submitted July 9, 1923—Decided September 28, 1923.

On appeal from the Supreme Court in which the following
*per curiam* was filed:

"This is a workman's compensation case. It appears that
the prosecutor operated a macaroni factory. Decedent
worked for them on the third floor, feeding a noodle machine.
He is supposed to have left the factory for lunch shortly
after twelve o'clock noon on June 14th, 1917. The next
thing known of him was when his dead body was found at
twelve thirty-five P. M., wedged between the elevator and the
floor on the third story of the building. His administrator
brought this proceeding under the Workmen's Compensation
act to recover compensation, and he was awarded compensa-
tion by the Hudson County Common Pleas judge.

"The company brought that judgment into the Supreme
Court, where it was set aside because there was no finding
that the accident arose out of the employment. The case
went back and the Common Pleas judge made such a finding,
and on the same record, plus the finding, the matter is here
for review.

"After a careful examination of the testimony we are
unable to find any evidence supporting the finding.

"Decedent had punched his time out for lunch hour at
twelve twenty-one P. M., and was not due back to his work
until one o'clock P. M.

"No witnesses were produced to prove how he met his
death; but he was found lying on the floor with his head
and shoulders in the elevator shaft, resting on the lower
door, the rest of his body extending out on the third floor
of the building. His head had been crushed evidently be-
tween the upper and lower doors of the elevator. These

doors were automatic in closing and operate in this manner: when the elevator leaves the floor one-half of the doorway comes down from the upper part of the opening; the other half comes from the level of the floor and meets the upper door .half way in the space that is open when the elevator is stationary at the floor landing.

"The elevator was solely and only a freight elevator, used to carry merchandise from one floor to another. A regular elevator operator was employed to run this elevator, and during the noon hour it was shut down, the operator going for lunch.

"At the time decedent met his death the elevator operator had not as yet returned from lunch and the elevator was shut down.

"No one else in the company's employ had any authority or right to operate this elevator during the daytime. The elevator was left by the operator at the second floor, with the doors open, and indisputably was in good mechanical condition, both before and after the accident, and the doors were in proper mechanical condition, both before and after the accident.

"The decedent had no duties whatsoever that would take him near the elevator. The noodle machine, at which he was employed, was at the opposite side of the building from the elevator; the stairway provided for employees to leave the building was likewise at the opposite side of the building from the elevator.

"It was the rule of the company that employees were not permitted to ride on the elevator; that it was solely a freight elevator, and not only were all employees instructed not to ride on the elevator. but a sign was posted at the elevator doors which read: 'Employees are forbidden to ride on this elevator. It is not designed for carrying passengers. Lewis T. Bryant, commissioner of labor. This card is placed here by authority of the State of New Jersey and must not be mutilated or removed.'

"The petitioner below produced two witnesses who were operators on noodle machines, who testified that employees

had used the elevator in riding from floor to floor to the knowledge of the 'production manager' on one or two occasions, and it is argued therefrom that the prosecutor had waived the rules in this respect.

"But we perceive no testimony which would justify the finding that the corporation had waived the observance of the notice forbidding the use of the elevator for passenger service, placed there by the authority of the commissioner of labor. The only permissible inference from the evidence is that the decedent was operating the elevator himself for purposes of his own (not in the work of his employer) and in express violation of the notice, and was killed while attempting to leave the elevator. Certainly there was no evidence which would justify the inference that the corporation had so waived compliance with the notice as to invite or justify such use.

"Such we think was the view of the trial judge; but he seems to have found that the decedent 'was not operating the elevator,' that 'it was being operated by somebody else,' and to have rested his judgment on that finding. But we find no testimony showing, or tending to show, that. On the contrary, as we have indicated, the only possible inference from the testimony is that he was operating it himself.

"The judgment below will be reversed."

For the appellant, *Alexander Simpson.*

For the respondent, *Aulenreith & Gannon.*

PER CURIAM.

The judgment under review should be affirmed, for the reasons expressed in the opinion of the Supreme Court.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, PARKER, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, GARDNER, VAN BUSKIRK, JJ.  10.

*For reversal*—None.